### WILSON v. WINTER and Wife.

*(Circuit Court, W. D. Wisconsin. ——, 1881.)*

1. MORTGAGE—UNAUTHORIZED STIPULATION.

    In the absence of fraud, the mere fact that a mortgage, drawn by the agent of the mortgagor, contained an unauthorized stipulation, would not avail as a defence to its foreclosure, although the mortgagor could not read the mortgage, and the same was not read to him before execution.

2. SAME—EXECUTION ON SUNDAY—WISCONSIN STATUTE.

    A mortgage executed on Sunday, without the knowledge of the mortgagee, dated, acknowledged, and delivered on the following day, is not void under the statute of Wisconsin, which imposes a fine for any labor or business done on the first day of the week.

3. SAME—SAME—ESTOPPEL.

> In such case the mortgagor is estopped from showing that the mortgage was executed on a day other than that of which it bears date.

4. OPTION TO DECLARE WHOLE AMOUNT DUE—NOTICE.

> Where a mortgage contains a provision that the mortgagee may, at his option, declare the whole amount due after there has been a default in the payment of interest for 10 days, such option must be declared at the expiration of 10 days, or within a very short and reasonable time thereafter.

5. SAME—SAME—SAME.

> Notice of the mortgagee's option to declare the whole amount due after a default of six weeks was too late under the circumstances of this case.—[ED.

In Equity. Suit to Foreclose Mortgage.

*J. F. Ellis*, for complainant.

*Meggett & Teal*, for defendant.

BUNN, D. J. This action is brought by the plaintiff, who is a resident of New Jersey, against the defendants, who reside in the county of Eau Claire, Wisconsin, to foreclose a mortgage for the sum of $1,200, executed by the defendants to the plaintiff on July 8, 1878, upon certain land of the defendants. The mortgage is collateral to a bond executed by the defendants at the same time. The defendants' answer, which is under oath, sets up several defences: *First*, they deny the execution of the bond and mortgage sued upon. *Second*, they allege that they are Germans by birth, and cannot read or write the English language; that they made an agreement with an attorney and agent of the plaintiff for a loan of $1,200 on five years' time, with 10 per cent. annual interest; that to carry out said agreement they executed, acknowledged, and delivered the bond and mortgage set out in the complaint, which had been prepared for them by the plaintiff's attorney, supposing, without reading them, that they were a bond and mortgage running five years, with 10 per cent. interest, payable annually, whereas the mortgage was, in fact, so drawn as to fall due in four years' time, and the interest was made payable semi-annually; and the mortgage also contained a provision that, in case the interest remained at any time overdue for 10 days, it should be op-

tional with the mortgagee to declare the whole sum due, of which provision they were ignorant when they signed the mortgage. *Third*, that the bond and mortgage were made, executed, and delivered on Sunday, the seventh day of July, 1878, instead of July 8, 1878, the day of their date, and are consequently void under the Sunday law.

There is no evidence whatever to support the first defence. There was a great deal of testimony taken in support of the the second, but it all goes but a small way to defeat the mortgage.

The defendant Johann Winter testifies that he applied to R. D. Campbell, residing at Augusta, near where defendants reside, to obtain for him a loan of money, and offered to pay him $50 to get him a loan of $1,200 for five years, at 10 per cent., and that Campbell agreed to get it for him; that after Campbell had arranged with J. F. Ellis, an attorney at Eau Claire, to secure the loan, and after Ellis had obtained a promise of it from the plaintiff, Campbell, who was himself an attorney, drew up the papers, and presented them to the defendants for their signatures, stating that they were all right. Defendants thereupon executed the bond and mortgage without requiring them to be read or explained to them, and not being able to read them themselves; and on the next day went to Eau Claire and consummated the loan with Ellis by delivering the papers and getting the money, without reading the bond and mortgage, or requiring any further explanation of their contents. The mortgage contains a stipulation for the payment of semi-annual interest on the first day of December and June in each year; is drawn to become due on July 7, 1882, four years from date, and contains the option clause above referred to. The testimony to show these facts is quite voluminous, but it constitutes no defence to the action. There is no evidence of any fraud. Campbell, instead of being the agent of the plaintiff, was the agent of the defendants in procuring the loan and drawing the papers; and if the defendants did not understand the stipulation contained in the bond and mortgage it was their own fault. If they did not understand the English language,

there was the greater need on their part of having the writing explained to them before they signed it; and they cannot set up their own gross negligence in that behalf to defeat a written contract, entered into with all the solemnities and formalities of law. The defendant testifies before the examiner at great length as to what the terms of the contract were as agreed upon between him and his agent, Mr. Campbell, as though it were possible to substitute that agreement in the place of the writing itself.

As to the third and last defence, I think the case made by the defendants is quite as defective and unsatisfactory.

The bond and mortgage are dated on July the 8th, which fell on Monday. The acknowledgement before J. R. Button, the justice, also bears date on that day. Button testifies that he took the acknowledgment of both the bond and mortgage on that day, in his office at Augusta; that the defendants were both present in his office at the time. He says: "I was sitting at my table where I do my business, and Mr. Winter and his wife came in, and one of his sons, (I could not say which one it was; I was busy writing, I think, at the time,) and wanted I should take the acknowledgment of some papers. They sat down, and I took the acknowledgment. I inquired of them if they signed these papers of their free will and accord. They did not appear to understand,—kind of looked around,—and their son spoke to them and told them what I said, and they turned to me, both of them, and said 'Yes.' Mr. Schroeder was present. He came in at some time which I cannot testify to. Mr. Winter and this son brought the papers there. Campbell I don't think was present. They took the papers away. It was somewhere along in the morning—from 8 to 10 o'clock. I could not say exactly. That is the correct date of acknowledgment."

William Schroeder testifies circumstantially to being present about that time when defendants came into Button's office and acknowledged some papers, but he does not know what papers, nor the exact time; but from the circumstances he testifies to it was evidently the same occasion testified to by Button. The defendants deny, under oath, going before Justice

Button at all to acknowledge the mortgage, but they and their sons all testify that they executed the mortgage at their son's house, in Augusta, on Sunday, July 7th. Campbell does not remember the day; but they all agree that defendants and Campbell went to Eau Claire on Monday, the 8th, and consummated the loan by delivering the papers to Ellis for the plaintiff, and getting the money. Ellis testifies that he also was acting as agent for the defendants in getting the loan for them.

So far as the question of acknowledgement is concerned the defendants admit the acknowledgement under oath in their answer, and are, therefore, estopped from denying it on the trial. But they allege it was done on Sunday. Besides, I think the testimony of Button and Schroeder should be taken as conclusive that the acknowledgement was made on Monday, and I so find.

As to the time of the execution, as that rests wholly on the testimony of the defendants and their family, I think I must find that it was done on Sunday; and if that fact alone makes the mortgage void, then the plaintiff, who was in New Jersey, and entirely innocent of any knowledge of the fact of defendants breaking the Sunday law in Wisconsin, must suffer in their stead, while the defendants must be rewarded for their crime in the sum of $1,200 ready money. But I am not ready to believe that such is the law.

I think there is a general feeling among judges that the courts have gone quite far enough in holding contracts void that have been entered into on Sunday. If the question were unadjudicated I would, for one, think it going far enough to hold that where the parties are mutually guilty, the court would not lend its aid to enforce a strictly executory contract entered into on Sunday; but that when the contract is fully executed on one side, and the consideration passed, as in the borrowing of money or sale of and delivery of property, to require the defaulting party to restore the consideration and perform his agreement. According to some of the decisions, if I borrow a thousand dollars of my neighbor on Sunday, promising to return it at some future day, there is no con-

tract, either express or implied, which the courts will enforce against me to repay the amount, not even though I renew the promise on a subsequent week-day, because the contract being void there can be no affirmation, there being nothing to be affirmed. This may be, and doubtless is, from the premises assumed, logical enough, but it will not be claimed for the law, as it stands, that it metes out a very exalted species of justice. The statute simply provides that any person who shall do any labor or business on the first day of the week, except works of necessity and charity, shall pay a fine of $10.

The law itself, for what it was intended, which was to make the doing of labor on Sunday a misdemeanor, is, as everybody knows, a dead letter on the statute book. It is too often violated by persons belonging to almost all classes, and during a residence of over a quarter of a century in the state I have never known a single prosecution under it. The statute is never invoked except by defaulting defendants, who are seeking to take advantage of their own wrong to defeat and get rid of paying a just debt. But I know of no decision, and have been referred to none on the argument of this cause, that holds a contract void because one party, unknown to the other, in the private recesses of his own home, draws up and signs a mortgage on Sunday, dates and acknowledges it on a week-day, and on a week-day consummates a contract for the borrowing of money, on the faith of the mortgage, with a person who is innocent of any knowledge that the law has been violated. Such law would indeed be a disgrace to the jurisprudence of any age or country. That is just this case, and I think it safe to say that the statute will be fully vindicated by a prosecution and fine of the offending parties in a court of justice of the peace, without punishing the innocent and rewarding the guilty by a forfeiture of the sum loaned.

The vital defect in the defendant's defence is that it is not true. The contract was not made on Sunday. The drawing up and execution of the bond and mortgage were a step necessary for the defendants to take in order to consummate

the loan. But it did not of itself constitute a contract. Nobody was bound by it, and there was no contract made until the delivery of the money and papers on Monday. Besides, the papers being dated on the 8th, which was a week-day, and the plaintiff having no reason to suppose they were not executed on that day, the defendants are undoubtedly estopped from showing that they were really executed on another day, which was Sunday, because such a proceeding would operate as a gross fraud upon an innocent party.

There is only one other question, which is whether the plaintiff is entitled to a foreclosure for the entire amount of principal and interest, the principal not being due yet by the terms of the mortgage. The first six months' interest fell due on December, 1878. It was not paid, nor has any interest ever been paid. But the notice of the plaintiff's option to declare the whole amount due was not served until February 7, 1879, some six weeks after the ten days had elapsed, during which the defendants might pay the interest before the plaintiff could elect to declare the principal due. I think this was too late, and that the option should have been declared at the expiration of ten days, or within a very short and reasonable time thereafter; and that the plaintiff's decree should be for the foreclosure of the mortgage for default in the payment of interest.

Decree of foreclosure for the plaintiff, with costs.