F. L. KILBY, Appellee, v. HENRY FITZPATRICK et al., Appellants.

SPECIFIC PERFORMANCE: Indefinite Evidence of Contract. Evidence reviewed, and held too indefinite and uncertain to justify a decree of specific performance.

STEVENS, C. J., dissents.

*Appeal from Harrison District Court.*—J. B. ROCKAFELLOW, Judge.

April 8, 1922.

ACTION in equity, in which plaintiff seeks to enforce a written contract for the sale of real estate by defendants to plaintiff. Plaintiff asked specific performance, and as alternative relief, asked damages, in case performance could not be had. Defendants were married men, and their wives did not sign the contract. The trial court found for plaintiff, and found that the contract was valid and had been delivered; that plaintiff was entitled to an order of specific performance; but that, because the wives of defendants had not signed the contract and were not parties to the action, specific performance could not be had; that the value of the premises sold was, on March 1, 1920, the date of performance, $225 per acre, or $24 more than the contract price. Specific performance was ordered, but it was further provided in the decree that, within 20 days from its date, September 17, 1920, defendants should deliver to the clerk an abstract of title, which was to be turned over to plaintiff or his attorney for examination, and plaintiff was to have 5 days to make written objections to the title. If objections were so filed, the matter of said objections was to be submitted to the court for determination; if no objections were filed, defendants were, within 10 days thereafter, to deposit with the clerk a deed. If objections filed were just, defendants were to have a reasonable time in which to correct the title. When title was perfected, if necessary, as soon as abstract and deed were furnished, the deed to convey the land to plaintiff, subject to a $10,000 mortgage, as provided in the contract, with interest from the date such deed was furnished, was to be signed and acknowledged by defendants and their wives, and plaintiff was to pay the clerk or defendants, within 5 days, $10,000 and interest on the $1,000 earnest money check, and plaintiff was to deposit with the clerk, with the $10,000, his mortgage deed for $13,600, as provided in the contract, and his note for that amount, the said mortgage to be subject to a mortgage on the premises of $10,000, as provided in the contract; such deposit not to be required until defendants had complied with the order on their part. Defendants were required to pay the interest on the first mortgage to the date the deed was furnished, or to allow plaintiff

sufficient for that purpose out of the $10,000 cash deposit, and were to pay the 1919 taxes. It was further ordered that, if defendants should fail to comply with said orders, or any of them, at the time specified, then judgment should be entered by the court for the amount of damages specified, with interest from March 1, 1920. The cause was held open, for the purpose of entering judgment and for the purpose of determining whether the orders had been complied with, and for determining any dispute in regard to the title, as shown by the abstract. When the orders were complied with, the $1,000 earnest money check given by defendants was to be left with the clerk, for plaintiff. Defendants did not comply with any of the orders of the court, and made no move to that end, nor have they done so up to this time, though they now ask this court to extend the time, and permit them to comply. As we understand the record, no appeal was taken from the first decree, and before the final judgment was entered, and no supersedeas bond was given. The record does not show when the notice of appeal was given. It simply recites that it was done within six months after the entry of said decree and the rendition of the judgment. On November 4, 1920, plaintiff filed a motion asking for a judgment, which motion was sustained on November 20th, and judgment entered for that amount, with interest and the costs of suit. Plaintiff alleged performance and readiness to perform on his part, demand of performance on the part of defendants, and their refusal. The defendants appeal.—*Reversed.*

*Kindig, McGill, Stewart & Hatfield* and *Roadifer & Roadifer,* for appellants.

*C. W. Kellogg,* for appellee.

PRESTON, J.—This is another speculative real estate bubble exploded. The transaction occurred in 1919, during the land boom. It would seem that, at that time, when land was going up, plaintiff was anxious for specific performance, and defendants, for the same reason, did not desire to perform; but now that the price of land is down, defendants would doubtless be glad to sell, and now comply with the contract, but plaintiff doubtless

would prefer the money judgment to the land. We have had some similar cases recently. Defendants answered, first admitting the execution and delivery of the contract, but alleged that the same was executed and delivered on Sunday, and was, therefore, void. They also set up the concededly inconsistent defense, which they had the right to make, that the contract was never delivered to the plaintiff, but was delivered to one Schulmeister, defendants' agent, as a memorandum or outline, for the purpose of preparing the real contracts which were to be executed by the appellee and then tendered to appellants for approval and execution. They also pleaded that plaintiff had failed to perform his part of the contract, in that he did not pay the $10,000 cash named in the contract or tender the same to appellants within the time agreed upon. As we view it, the more important question in the case is one of fact, as to whether there was a delivery of the contract. Appellee makes the point that defendants have admitted, in one count or division of their answer, that the contract was executed and delivered on April 6, 1919, which was on Sunday. It is conceded that the memorandum or contract was signed by the defendants on Sunday, and handed to their agent, Schulmeister, on that day; but this would not make a binding contract upon the plaintiff. On defendants' own theory, plaintiff did not sign the contract for some days thereafter. Plaintiff does claim that the contract was finally consummated on a secular day, and that it is, therefore, valid. Before going to the question of delivery, we shall dispose of some of these other matters, and as briefly as may be.

1. We think there is no merit in appellants' claim that the contract was void because it was a Sunday contract. According to the evidence of defendants,—and it is their claim and their main reliance,—the contract never was consummated; and appellee does not claim that the contract was finally consummated on Sunday, but, as said, claims that it was consummated later, and on a secular day. Plaintiff makes the further claim, and the evidence so shows, that, when he signed the contract, he did not know that defendants had signed it on Sunday. Appellee contends, and cites authority to the proposition, that, under such circumstances, and where plaintiff did not participate in the alleged illegal transaction on Sunday, the contract is not

invalid as to him. On this ground, and the further ground that the contract was not finally consummated, as plaintiff says, until some days later, he says that the contract is valid.

2. As to defendants' claim that plaintiff failed to perform, in that he did not pay the $10,000 cash at the time agreed upon, it appears that plaintiff frequently requested and demanded of defendants performance of the contract on the part of defendants, and that, in each instance, the defendants refused, and have at all times refused to carry out their part, and, about June, notified plaintiff by letter that the deal was off, and ever since have refused to perform. Appellants make the further claim that their agent, Schulmeister, agreed, on Sunday, the 6th, that he would prepare the real contracts and return to defendants, with plaintiff's $1,000 earnest money check, by the following Tuesday. This was not done within that time. We are not disposed to discuss this last proposition at any length. There might be some question whether the defendants and their agent could make an agreement between themselves which would bind the plaintiff to do these things by the following Tuesday. But at most, the evidence is in equipoise on this proposition. The two agents for defendants, testifying for plaintiff, say that it was not so agreed; while the two defendants say that it was. The plaintiff contends that, by the absolute refusal of defendants to proceed, they waived the matters here last referred to, and that defendants will not be permitted to rely thereon. Appellants further claim that they had the right to rescind the contract, because it was a Sunday contract, and they claim that they did rescind; but what we have said disposes of that question. No fraud or other ground for rescission is alleged or shown. Appellants further contend that they had a right to rescind at any time before the contract was finally consummated, and that it has never been consummated; and further, that they had the right to rescind, and that they did rescind before they knew that plaintiff had signed what defendants call the outline for the contract, which was delivered to Schulmeister on Sunday. If defendants' theory of the transaction is correct, that the writing they signed on April 6th was a mere outline for the real contracts, which have never been executed, or that there was never any authorized delivery of the paper they signed on the 6th, as

the real contract between plaintiff and defendants, we think they would have the right to refuse to consummate, at any time before the final execution and delivery of the consummated contract. No question is made but that they did notify plaintiff that the contract was off; and that they refused to proceed with it. We think there was no ratification by defendants of the paper signed on April 6th, as contended by appellee. They had expressed their unwillingness to accept the proposition, before the $1,000 check and the two blank contracts were tendered. They were all the time refusing to carry out the deal.

3. There is a direct conflict in the evidence, between the defendants and the witnesses testifying for plaintiff, on the subject of the execution of the contract. The only persons present at the time were the two defendants and Schulmeister and his partner, Adlum. The two last named were witnesses for plaintiff. Schulmeister seems to have done most of the talking, and did whatever was done by his firm, after the Sunday in question, and he testifies more in detail as to what was said and done than does his partner. Plaintiff, as a witness, testifies to signing the contract, sending the check, and so on,—matters occurring after April 6th. One of the defendants was called as a witness for plaintiff on the point as to whether defendants were married, and in rebuttal in regard to a letter he received with the check and the two typewritten contracts for his signature, when they were returned to defendants the second time; also as to a letter defendants wrote their agents, which was dated June 23d, but which seems to have been actually sent seven or eight days prior thereto; that he retained the $1,000 check from about April 10th to about June 23d; that he figured that his prior letter canceled the deal, and he laid the check in the safe, and forgot to send it back. Several other witnesses, testifying for plaintiff, testified only as to the value of the land on March 1, 1920. On this subject, defendants did not put in any evidence. On the main transaction, then, as to what occurred and what was said on Sunday, April 6th, plaintiff relies most strongly upon the testimony of Schulmeister, or at most, Schulmeister and Adlum, and they are flatly contradicted by the testimony of both defendants. Schulmeister and his partner, though agents for defendants, were the main witnesses for plaintiff on the vital point in the

case, and seem to have been active, during the trial and before the trial, in securing the signature of plaintiff to the contract delivered to them by defendants on Sunday, April 6th, one of them making a trip to Omaha, where plaintiff lived, for that purpose. They were also prompt in their effort to have defendants sign a note for their commission of $320.

It must be admitted that there are some inconsistencies in the testimony of both sides. For instance, if, as defendants contend, the writing signed by them on Sunday was only as a form or outline for contracts, to be drawn later, it would have been unnecessary for them to sign that paper. On the other hand, if, as plaintiff contends, the only purpose in preparing three of the contracts, or duplicates, was that they might be used as office copies, it would not have been necessary that these three should have been sent to defendants for their signatures. The three were sent to defendants twice for the defendants' signatures, and defendants each time refused to sign. The fact that the three duplicates were sent to defendants, with the request that they be signed, would seem to corroborate, and we think it does corroborate, the defendants' claim that the first writing, on Sunday, was a mere outline, and that the real contracts were to be prepared and sent to them for signature. Other side lights in the case tend to sustain appellants' theory. Another peculiarity about the matter is that defendants do not claim that the contracts which were to be prepared from Exhibit 1 were to be at all different as to form and terms from the one which they signed on Sunday. However, if it be true, as they contend, that Exhibit 1 was a mere form, and that its delivery was conditional, and that there was to be no contract, or Exhibit 1 was not to take effect, until the real contracts had been prepared, signed by plaintiff, and returned to defendants, with the $1,000 check, the contracts to be then signed by defendants, defendants would have the right to declare the deal off at any time before the contracts were finally made. This they did. At most, the evidence is so evenly divided on the main proposition, and there is so much doubt about it as to what the real transaction was, that, in the exercise of the discretion of this court, we do not feel justified in upholding the finding of the trial court that there should be specific performance. There are no

intervening equities of third persons. Defendants have retained possession of the land. Plaintiff has paid nothing on the contract, except that he tendered his check for $1,000, which defendants did not accept. He may have had the use of the money, or he may have kept it on deposit, to meet the check. The record does not show. Other circumstances will be referred to later in the opinion. The three copies, with the $1,000 check, were received by defendants about two weeks after April 6th. Defendants testify that, when the check and duplicate contracts did not come, and after it had dragged along about two weeks, they wrote Schulmeister, and told him that the deal was off: As we understand the record, this letter was sent by defendants at about the same time that Schulmeister sent the check and the three copies, and the letters crossed in the mails. This was before defendants knew that plaintiff had signed the writing, Exhibit 1, which had been signed by the defendants on Sunday. Plaintiff testifies that he signed Exhibit 1 about April 18th, at the same time that he made his check; that Exhibit 1 was left with him at that time; that, about that time, two duplicate copies were made from Exhibit 1. When the check was returned by defendants, through Schulmeister, it was offered to plaintiff, and he refused to receive it. It is well settled that it is competent to show by parol that a written agreement is subject to a condition, or is not to go into effect until certain matters have been determined. *Hinsdale v. McCune,* 135 Iowa 682, 684; *Sutton v. Weber,* 127 Iowa 361; *Oakland Cemetery v. Lakins,* 126 Iowa 121; *Mt. Vernon Stone Co. v. Sheeley & Co.,* 114 Iowa 313; *McCaskey Register Co. v. Hall,* 140 Iowa 87; *Lavalleur v. Hahn,* 152 Iowa 649, 662 (39 L. R. A. [N. S.] 24); *Heitman v. Clancy,* 167 Iowa 58, 63; *Waukee Sav. Bank v. Jones,* 179 Iowa 261, 266. Other facts, in addition to those already recited, having a bearing on the question of whether there was any delivery, or whether the delivery was conditional, are these: Plaintiff has been in the real estate business for a good many years. Defendants are hardware merchants, but deal more or less in real estate. Defendants had purchased the 160 acres in controversy through the Schulmeister firm, and defendants had listed the land with Schulmeister, to sell for them. The Schulmeister firm concede that they were employed by defendants

only to find a purchaser. On Saturday, April 5th, having, as they claim, secured plaintiff as a purchaser, they prepared the writing, Exhibit 1. It was dated April 5th, written with pen and ink, and, as we understand it, from printed blank forms which they had in their office. Schulmeister says he is a poor writer, and that that was another reason for the talk that duplicates or copies were to be prepared in typewriting. Exhibit 1 now appears signed by both defendants and the plaintiff. Defendants say that it was talked on Sunday that a Sunday contract was invalid, but Schulmeister and his partner do not remember that. On Sunday, Schulmeister and his partner went to defendants with the prepared contract. The defendants testify positively that the agents stated to them that Exhibit 1 was to be an outline or memorandum; that there would be contracts made and forwarded the next Monday or Tuesday, at the latest; that Schulmeister said that he would prepare those contracts; that he wanted Exhibit 1 merely as an outline, from which he could draw the contracts; that defendants did not tell the agents that they could deliver Exhibit 1 to Kilby for his signature; that Schulmeister did not say he was going to deliver it to Kilby; that defendants did not tell him to have Kilby sign Exhibit 1; and that the agents did not say they were going to have Kilby sign it. Defendants say they never asked Kilby to sign Exhibit 1, never told him to do so; that he never asked if he could; that they never knew that Kilby pretended to have a contract with defendants for this land, until he received Schulmeister's letter, dated June 27, 1919; that Schulmeister was to draw those other contracts, and they were to be signed later, and plaintiff was to send his check. Defendants say that their purpose in signing the memorandum, Exhibit 1, was to give Schulmeister an outline from which to draw a contract; that that was their idea in signing it.

"It was said that the purchaser was to sign the contracts that were to be drawn up. Nothing said about his signing Exhibit 1; it was to be an outline. That is what Schulmeister said: he wanted an outline; he wanted it that way, so we were accommodating him. I knew Schulmeister forwarded those contracts as agreed. Didn't consider, when we signed Exhibit 1, that we were agreeing to convey land to somebody. He was to sign the

contract, but not that contract. We read the contract over. Never delivered Exhibit 1 to Kilby; never intended that it should be delivered to him,—positively not. Never told Schulmeister to do anything else with Exhibit 1, except that he was to use it to draw the contract from, as an outline. Never employed Schulmeister to deliver this contract to Kilby; never agreed to pay him for doing that; never hired him to do anything except to find a purchaser for the land. We never cashed the check. Never signed the contracts that were sent to us.''

The foregoing is substantially the testimony of defendant Henry Fitzpatrick. The other defendant testifies substantially the same, except that, at one point in his cross-examination, he says:

''Q. What did you understand about Mr. Kilby signing the contract? When Mr. Kilby signed it, it became binding? A. Yes, sir.''

But taking his evidence altogether, it is clear that he meant, when Kilby signed the contracts which were to be prepared from Exhibit 1. From their testimony, it is quite clear that they did not understand and did not intend that Exhibit 1 should be the contract; that it was delivered to their own agents conditionally, and for a certain purpose; and that it was not used for that purpose. In a letter from Schulmeister to defendants, dated April 18, 1919, he says:

''Enclosed find contracts for the sale of your farm, together with a check for $1,000 paid by Frank Kilby. Please have these signed up by yourself and your brother Pat, and keep one for yourself and return one to me, and I will send it to Mr. Kilby, and keep your original one in our office for reference. * * * I am enclosing a note for our commission due March 1, 1920. Please sign and return with the contract.''

There is not a word in this letter that plaintiff had, on that date, signed Exhibit 1, or that he was going to sign it. The defendants are contradicted in this by Schulmeister and Adlum. Schulmeister, in addition to what has been before referred to, testifies that, after defendants had signed Exhibit 1, on Sunday, he went to Omaha, to see Mr. Kilby, who was not in, the first time; so he went down again, in a few days, and Kilby said it was all right, and gave him a check for $1,000.

"I have the check. The check appears to bear a double date: one of April 18th, and then, in smaller figures, April 25th. The 18th is the day the check was executed. This was called to my mind when I asked Kilby's attorney to see when he wrote the check. After Kilby turned the check over to me, I mailed it to the Fitzpatricks, the next morning, with two type-written copies of the contract. [He thinks it was the 18th day of April he mailed it.] Defendants returned the check to me June 15th, in their letter which is dated June 23d."

As said, plaintiff testified that he signed Exhibit 1, April 28, 1919; but it was acknowledged by Kilby before a notary public, and the notary's certificate recites that it was acknowledged April 7, 1919. It was recorded in Harrison County, June 21st. It was not acknowledged before a notary public by defendants. Schulmeister testifies further that he had several talks with defendants, in which they said they would not comply with the contract, and he so informed plaintiff; that he told defendants to return the check, and call the deal off; that Kilby said he wanted the land, and wanted to settle March 1st, according to contract. The $1,000 check was introduced in evidence, and the abstract shows that it is dated April 25, 1919, and is payable to Schulmeister, and bears indorsement by him to Henry Fitzpatrick. Schulmeister says further that, when he saw plaintiff, he told him that he had his contract signed up for him, and wanted the check; that he then prepared two contracts, signed, and sent those two contracts with the check to defendants,—that is, the copies of the contract; that, about the same time, he received word from defendants that they were not going through with it.

"The contracts had been signed by plaintiff before I sent them to defendants, I think,—I am not sure about that. The check and copies were returned by defendants. What I was trying to do for defendants was to find a purchaser for the land, and that is what they had authorized me to do. I figured my interest in the transaction was the same as an ordinary real estate agent. Kilby had been in our office, and we took him out and showed him the land, and he said he would take it."

It does not appear that Schulmeister told defendants that plaintiff had seen the land. Schulmeister continues:

"I wouldn't be surprised if I did, as a matter of fact, tell plaintiff, when he was at defendants'. Do not remember of telling him when. Must have told him we were there, because we had the contract signed up. After defendants returned the check and contracts to me, the first time, I again returned the check and contracts, and they the second time refused to fulfill the contract or cash the check, and they the second time returned the contract and check to me. I told Kilby of their refusal each time. Exhibit 1 was not left with Kilby; I took it back with me, as a record in our office. I told Kilby we would have a copy of the contracts made, and send him one, and have one for defendants. There was nothing said between me and defendants about that copy of the contract being held by me after Kilby had signed it. The contract was left with Kilby at the time he gave me the check, and I told him I was going to send two more copies. I didn't know what you meant. We have a system in our office of having three of those contracts made, so we have one copy in our office, to settle by; and for convenience in this deal, we had two copies of this original made, for reference, and I sent these two to defendants to sign. They were duplicates. The original contract was left with Kilby, when he gave the check. He was to give the original contract back, and they were to keep the typewritten copies,—that is, in case they were signed. I had no word from defendants between April 6th and April 18th. It was the 18th I mailed the check and the two duplicate contracts. It was the next day that I got the letter from them in which they said the deal was off. When I got the $1,000 check from plaintiff, I left Exhibit 1, and intended to get it back for use in our office, one or the other,—it didn't make any difference which one, so we had a record. That was the idea. I told plaintiff we were up to defendants', but don't think I had, prior to the time the Sunday question was raised, told plaintiff that it was signed on Sunday. There is no reason why I should not have done so, as I didn't know that a Sunday contract was illegal; I thought it was all right."

Without setting out the evidence further, and without again referring to the different circumstances, it is enough to say that we are not satisfied that defendants' version of the transaction is not the correct one, and that the contract was not executed

upon the conditions claimed. This being so, there was not a sufficient showing which in equity ought to warrant a specific performance.

For the reasons given, the judgment is reversed, and plaintiff's petition is dismissed.—*Reversed.*

WEAVER, EVANS, ARTHUR, FAVILLE, and DE GRAFF, JJ., concur.

STEVENS, C. J., dissents.