WEINSKLAR REALTY COMPANY, Appellant, vs. DOOLEY and another, Respondents.

*December 5, 1929—January 7, 1930.*

For the appellant there were briefs by *A. L. Skolnik,* attorney, and *S. G. Skolnik,* of counsel, both of Milwaukee, and oral argument by *A. L. Skolnik.*

For the respondents there was a brief by *Harold J. Mc-Grath* and *H. A. Kovenock,* both of Milwaukee, and oral argument by *Mr. McGrath.*

FRITZ, J. On October 16, 1926, the plaintiff as lessor, and the defendants Dooley and Driscoll as lessees, executed a lease for a term of five years from December 1, 1926. The lessees, as copartners, conducted a drug store in the premises until June 1, 1927, when they organized a corporation, which then continued the business in the premises under an assignment of the lease from the lessees. There

was a provision in the lease that the lessees agreed not to assign the lease "without the consent of the lessor in writing first had and obtained." However, the evidence established and the court found that that assignment was made with the knowledge and consent of the plaintiff, and that plaintiff accepted checks of the assignee in payment of rent. In that connection the court also found that the defendant Clarke had no knowledge of the assignment of the lease or the existence of the assignee as a corporation.

On July 28, 1928, the assignee of the lease made an assignment for the benefit of creditors, and a trustee was appointed, who removed the stock and on that date turned the key over to plaintiff without paying the rent for July, 1928. The court found that the plaintiff "then and there accepted such key and that plaintiff thereafter placed 'For Rent' signs and advertising matter in the windows of the demised premises;" and also that plaintiff did not, prior to the commencement of this action, give any notice to the defendants, including the guarantor Clarke, of plaintiff's intention to relet the premises for or on account of the defendant lessees, or to hold or relet said premises for the defendants. The plaintiff succeeded in reletting the premises by September, 1928, and brought this action to recover the rent for July and August from the defendants.

As to the defendant Dooley, the court held that he was liable only for the July rent, because the acceptance of the key and the overt acts of plaintiff in placing signs and advertising matter in the windows showed that plaintiff took possession. However, upon a review of the record, it does not appear that, aside from retaining the key for the purpose of placing the "For Rent" signs in the window, and letting in a new tenant as soon as plaintiff could procure one, there is any proof that could be construed as evidence of an intention on the part of the plaintiff to accept a surrender of the premises so as to relieve those liable under the lease.

Under the rule of *Lincoln Fireproof W. Co. v. Greusel,*

199 Wis. 428, 224 N. W. 98, 227 N. W. 6, 7, where a tenant vacates or abandons the leased premises before the end of the term, the landlord has a right to elect to accept the surrender and terminate the lease or to enter and take possession for the purpose of mitigating the damages for which the tenant is liable because of his breach of the lease. The election to enter for the purpose of mitigating damages may be evidenced by formal notice or by other proper means constituting such unequivocal act as would amount to an election of remedies in a proper case.

The mere entry and taking possession of the premises for the purpose of leasing the same does not constitute such an election, because it is an equivocal act,—something to be done by the landlord regardless of whether his purpose be to terminate the lease or merely to perform his legal duty to mitigate damages.

The right to elect which course he will pursue remains with the landlord until he makes his election by taking some step which clearly evidences an intent to make a choice between the two inconsistent remedies that are open to him. Such a choice was made in this case when the plaintiff began this action. That act clearly evidenced an election on the part of the landlord to hold the tenant liable on the covenants of the lease and established the fact that the landlord took possession for the purpose of reletting the premises in order to mitigate the damages which he sustained through the tenants' breach of the lease. The lease expressly gave the lessor the option, upon the lessees abandoning or vacating the premises before the expiration of the term, to relet the same and apply the rents reserved from such reletting upon the lessees' obligation for rents due or to accrue. Consequently, the lessor's retention of the key, the placing of "For Rent" signs, and the reletting were merely in exercise of the option which the lessees gave the lessor. At best, those acts might be considered of merely an equivocal nature, capable of being construed as indicating either an

intention on the part of the landlord to relet for the benefit of the lessees in order to mitigate the damages for which the lessees are liable because of their breach of the lease, or as indicating an intention to permit the lessees to surrender the premises and terminate the lease. As stated in 2 Thompson on Real Property, § 1470:

"Too much importance should not be attached to a delivery of the keys to the landlord and his attempt to relet the premises. The legal effect of these acts depends largely on the intent with which the keys were delivered and for what purpose they were accepted."

For the reasons stated, there was no accepted surrender and termination of the lessees' obligations, and they were liable to plaintiff for the unpaid rent for July and August, 1928, amounting to $350.

As to the guarantor, Clarke, the court held that he was relieved from all obligations under the lease, because the assignment thereof by the lessees on June 1, 1927, was without Clarke's knowledge or consent. However, there was in the lease an express provision on the subject of the assignment thereof by the lessees, and that contemplated that there could be an assignment by the lessees provided the lessor duly consented thereto. As to such a provision it is said in 2 Thompson on Real Property, § 1386:

"If the lease provides that the lessee shall not assign or sublet without written consent, there is an implied understanding that with such consent there may be an assignment or subletting, and the sureties are bound to know this when they execute their guaranty. Hence it would not operate to discharge them from their liability that the lessors should give such a written consent."

See, also, 28 Corp. Jur. p. 996; *Grommes v. St. Paul Trust Co.* 147 Ill. 634, 35 N. E. 820; *Gilbert v. Henck*, 30 Pa. St. 205; *Oswald v. Fratenburgh*, 36 Minn. 270, 31 N. W. 173.

On this appeal it is also contended on behalf of the guarantor, Clarke, that he is not liable because (1) there was no consideration for the guaranty; and (2) the contract of guaranty was signed on a Sunday and therefore was void. The guaranty which was signed by Clarke is as follows:

"For value received and in consideration of the lessor making the within lease, I hereby guarantee the payment of the rent and the performance of the covenants by the lessees covenanted therein and agreed in the manner and form as in said lease provided.

"Witness my hand and seal this 18th day of October, 1926."

On its face it is expressly stated that the guaranty is based on a valuable consideration. The words "for value received" are a sufficient compliance with sec. 241.02, Stats., requiring a promise to answer for the debt, default, or miscarriage of another to be in writing, expressing the consideration, and subscribed by the party to be charged therewith. *Jansen v. Kuenzie,* 145 Wis. 473, 130 N. W. 450, and cases there cited.

However, in addition to the statement that the guaranty was "for value received," it was expressly stated therein that it was given in consideration of the lessor *"making the within lease."* It was not stated that the guaranty was in consideration of the lessor *having made* the lease. That distinction is of especial significance in this case, because the guarantor claimed that the lease had been completely executed and delivered before he signed the guaranty; that therefore the guaranty was a separate transaction from the lease; and that the latter was not conditioned upon the obtaining of the guaranty and afforded no consideration for the guaranty. The evidence establishes that after preliminary negotiations the lessor's officers and the lessees met on Saturday, October 16, 1926, to execute the lease, but the lessees then sought to be relieved from the lessor's de-

mand that they deposit $500 as security for their performance. During the conference the defendant Dooley proposed that he would obtain the signature of the defendant Clarke, his father-in-law, to a guaranty. Thereupon, and solely for the purpose of enabling Dooley to obtain Clarke's signature, the pages of the lease, completely signed by the lessor and lessees, were given to Dooley. Dooley took them to Clarke's residence on Sunday, October 17, 1926, and then obtained Clarke's signature without inserting the date. Within a day or two Dooley inserted October 18, 1926, as the date, and delivered the lease, completely executed, to plaintiff, and thereafter the lessees were let into possession of the premises under the lease. From this sequence of events it is manifest that the guaranty rightly stated that it was given in consideration of the lessor "making" the lease, and not because of a lease which had theretofore been made. It was clearly contemplated by the parties that the giving of that guaranty was necessary to enable Dooley and Driscoll to obtain the lease, and the benefit thus obtained by them afforded sufficient consideration for Clarke's guaranty. *International Textbook Co. v. Mabbott,* 159 Wis. 423, 150 N. W. 429.

Although Clarke signed the guaranty on a Sunday and left it in possession of Dooley, for whose benefit Clarke was presumably willing to assume that obligation, there was no delivery thereof to the plaintiff until after that Sunday. Plaintiff was not represented when Clarke signed, and when plaintiff received the guaranty there was nothing to apprise him that it was not signed on October 18, 1926 (a Monday), as was stated above Clarke's signature. If there was any violation of sec. 351.46, Stats., prohibiting the doing of labor, business, or work on Sunday, the plaintiff did not participate in, and was not aware of, such violation when it subsequently accepted the guaranty in good faith. Under such circumstances, the right of an inno-

cent party to enforce a contract is not barred merely because it was in fact executed on a Sunday. *Diamond Glass Co. v. Gould* (N. J. L.) 61 Atl. 12; *Collins v. Collins,* 139 Iowa, 703, 117 N. W. 1089, 18 L. R. A. N. S. 1176; *Hall v. Parker,* 37 Mich. 590; *Beman v. Wessels,* 53 Mich. 549, 19 N. W. 179; *King v. Fleming,* 72 Ill. 21; *Evansville v. Morris,* 87 Ind. 269; *Wilson v. Winter,* 6 Fed. 16; *Kilby v. Fitzpatrick,* 193 Iowa, 714, 187 N. W. 580; *Gibbs & Sterrett Mfg. Co. v. Brucker,* 111 U. S. 597, 4 Sup. Ct. 572. The latter case involved a guaranty signed in Wisconsin on a Sunday, but which, as in the case at bar, was delivered to the plaintiff on a secular day. The court said:

"The ground upon which courts have refused to maintain actions on contracts made in contravention of statutes for the observance of the Lord's Day, is the elementary principle that one who has himself participated in a violation of law cannot be permitted to assert in a court of justice any right founded upon or growing out of the illegal transaction. *Cranson v. Goss,* 107 Mass. 439. . . . If, therefore, the evidence shows a good cause of action without any participation of the plaintiff in an illegal transaction, he may recover, the law simply refusing its aid to either party in giving effect to an illegal transaction in which he has taken part. . . . Applying these principles, it is clear there was no obstacle to a recovery by the plaintiff in this case. The plaintiff itself took no part in any violation of the law of Wisconsin forbidding the doing of labor, business, or work on Sunday. . . . We have examined all the cases decided by the supreme court of Wisconsin cited by counsel, and find nothing in them contrary to the views we have expressed. 2 Pin. 99; 31 Wis. 252; 51 Wis. 46; 3 Wis. 343; 38 Wis. 651; 52 Wis. 320. . . . We base our decision, however, on the grounds we have indicated, first, because it does not appear that the plaintiff had any part in executing the contract in violation of the law of Wisconsin forbidding the transaction of business on Sunday; and second, because the contract, though signed by the defendant on Sunday, was not delivered by him, and did not take effect on that day."

It follows that the court erred in concluding that Clarke was not liable on his guaranty; that the judgment appealed from must be reversed as to both defendants; and that plaintiff is entitled to judgment against both defendants for the $350 owing under the lease for rent for July and August, 1928.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in accordance with this opinion.