No. 44,052

Bertha Gordon, Executor of the estate of George Gordon, deceased, substituted for George Gordon, *Appellant*, v. Consolidated Sun Ray, Inc., a Corporation (Formerly Consolidated Retail Stores, Inc.) and Berkson's, Inc., a Corporation, *Appellees*.

(404 P. 2d 949)

342

Opinion filed August 17, 1965.

*Maurice D. Freidberg,* of Topeka, argued the cause, and *Byron M. Gray* and *Charles L. Davis, Jr.,* both of Topeka, were with him on the brief for appellant.

*James E. Smith,* of Topeka, argued the cause, and *Bernard M. Borish,* of Philadelphia, Penn., was with him on the brief for appellee.

The following opinion was prepared by Mr. Justice Robb and approved by the court during his lifetime:

This is an appeal from the trial court's order made March 24, 1964, and entered April 6, 1964. The judgment was against plaintiff on all causes of action in plaintiff's amended and supplemental petition except the sixteenth cause of action in the amended petition seeking recovery of real estate commission and expenses in the re-leasing of the premises to Walgreen's.

George Gordon, the plaintiff died on February 24, 1965; Bertha Gordon, his wife, was appointed and qualified, pursuant to the provisions of George's will, as executor of George's estate, and finally, on March 15, 1965, this court allowed her motion to be substituted as party plaintiff. Further, the action sought recovery of the difference between rentals after destruction of the premises by fire and the abandonment of the lease by Consolidated and Berkson's up to Walgreen's taking possession and paying full rent under its lease, plus accrued taxes, insurance premiums and expense of reletting the premises.

We should state that all of the above was also required of George and Bertha in a ninety-nine year lease (May 1, 1931, to April 30, 2030) with Louise V. Stover, the landowner, and Consolidated and Berkson's had full and complete knowledge thereof.

Hereinafter plaintiff will be referred to as George, the executor as Bertha, the defendants as Consolidated and Berkson's, and Louise V. Stover as the landowner.

This is the second appearance of this matter, the first being the case of *Gordon v. Consolidated Sun Ray, Inc.,* 186 Kan. 772, 352 P. 2d 951, and to avoid repetition that opinion insofar as pertinent is made a part hereof and will be designated when referred to herein as the first case, which was done at times by the parties herein.

Our preliminary facts are fully set out in the first case beginning on page 772. They show the twenty-five year lease, from May 1, 1956, to April 30, 1981, providing $30,000 annual rent payable in

$2,500 monthly installments, between George, as lessor, and Consolidated and Berkson's as lessees. Consolidated and Berkson's were also obligated to pay insurance, taxes and in case of fire, to replace the destroyed premises; and fire would not terminate the lease.

On March 17, 1959, a fire rendered the premises untenantable and in June 1959, Consolidated and Berkson's vacated and abandoned the premises and failed and refused to comply with any of their duties under the lease until forced to do so by court action. The first case ended with judgment for plaintiff and was affirmed on appeal.

During the pendency of the first case and on February 24, 1960, George settled with Consolidated and Berkson's for the sum of $72,-000 so far as their duty to pay for reconstruction of the premises was concerned but it was further agreed such settlement would not prejudice or affect any other claims of the parties in the case, and on May 20, 1960, the parties advised the court of the settlement, and the sixth cause of action was dismissed with prejudice.

After Consolidated and Berkson's abandoned the premises and George had notified them in writing that he was not accepting a surrender of the lease but was holding them liable, George took steps to mitigate the damage by notifying realtors in Topeka and Kansas City that the premises were available for re-leasing, and in April, 1960, George relet the premises to Walgreen Co., an Illinois corporation, for a term which extended through the unexpired term of the Consolidated and Berkson's lease. It was stipulated that the lease with Walgreen's was made after George had considered all other proposals and believed that Walgreen's offer would result in the greatest mitigation of damages flowing from Consolidated and Berkson's breach of their lease. The rental payable under Walgreen's lease greatly mitigated the liability of Consolidated and Berkson's under their abandoned lease.

In February, 1961, George brought a second action against Consolidated and Berkson's to recover the rents due under their abandoned lease and recovered the accrued monthly payments through February, 1961, the accrued taxes, and insurance premiums. Judgment was rendered in George's favor and no appeal was taken therefrom.

In neither the first nor the second mentioned case did Consoli-

dated and Berkson's assert as a defense that George had accepted their surrender and abandonment of the original lease.

On March 12, 1962, the third and instant action was filed, and the petition was amended August 10, 1962. In this petition George sought to recover the difference between the rental provided in the lease between him and Consolidated and Berkson's and the rental received by him from Walgreen's on reletting the premises subsequent to the second action; and accrued taxes and insurance premiums and expenses of reletting the premises. For the first time, after a complete settlement was made between George and Consolidated and Berkson's of their sixth cause of action in the first suit, George made a claim for a portion of the expenses of rebuilding the building on the premises, and Consolidated and Berkson's for the first time asserted that they were not liable for the reason that George by his acts of reletting the premises and reconstructing the building at an excessive cost accepted their surrender of the lease.

The trial court, in substance, found and held that George had accepted Consolidated and Berkson's abandonment of the lease on March 1, 1961, when Walgreen's began paying rent under its lease, and denied George's right to recover the deficiency in the rents prayed for. The trial court further disallowed George's cause of action for the reconstruction costs, based upon the settlement between the parties in the sixth cause of action in their first case, and further found that George was entitled to recover the $5,000 expenses for real estate commission in finding a new tenant and releasing the premises, and entered judgment accordingly. George appeals and asserts that the district court erred in holding (1) that he had accepted a surrender of the lease from Consolidated and Berkson's, and (2) that the defense of any such acceptance was not available to Consolidated and Berkson's in that they failed to raise those issues at the first opportunity in either the first or second action between the parties, both of which went to final judgment. Consolidated and Berkson's did not cross appeal from any part of the judgment rendered.

It is a long-standing rule in this state that where a tenant, under contract to pay rent on real property, abandons the property and notifies the landlord of that abandonment, it is the duty of the landlord to make a reasonable effort to secure a new tenant for the property and obtain rent therefrom before he can recover rent from the old tenant under the contract. Where a party seeks redress for

the wrong of another, the law requires that he shall do whatever he reasonably can and improve all reasonable opportunities to avoid the consequences and to lessen the injury. (*Marmont v. Axe*, 135 Kan. 368, 10 P. 2d 826, *Lawson v. Callaway*, 131 Kan. 789, 293 Pac. 503.)

While the rule declared in Kansas appears to be in conflict with the weight of authority in the United States, it has been so long declared and so consistently followed that it has become a rule of property and should not now be overruled. (*Lawson v. Callaway*, supra.)

Where a tenant vacates or abandons the leased premises before the end of the term, the landlord has a right to accept the surrender and terminate the lease or to enter and take possession for the purpose of mitigating the damages for which the tenant is liable because of his breach of the lease. The mere entry and taking possession of premises abondoned by a tenant, for the purpose of leasing them, is an equivocal act not amounting to an election by the landlord between an acceptance of surrender terminating the lease, and his right to relet for the purpose of mitigating the damages for which the tenant is liable. The institution of an action to recover rent for the period between the time the premises were abandoned by the tenant and the time when they were relet establishes the fact that the landlord's taking possession was for the purpose of reletting the premises in order to mitigate damages, rather than for the purpose of accepting the surrender and terminating the lease. (*Weinsklar Realty Co. v. Dooley*, 200 Wis. 412, 228 N. W. 515, 67 A. L. R. 875.)

Consolidated and Berkson's cite *Moore v. Brooks*, 148 Kan. 738, 84 P. 2d 864, where the action was to recover rent on a lease of business property. Defendant defaulted after four months' payment of rent. A demurrer to defendant's answer of *res judicata* was sustained and in turn was affirmed by this court. We can find no comfort or solace for Consolidated and Berkson's in that case. On the contrary, it coincides with our determination herein.

In the instant case the lease expressly gave George the option, upon Consolidated and Berkson's abandoning or vacating the premises before the expiration of the term, to relet the same and apply the rents reserved from such reletting upon Consolidated and Berkson's obligation for rents due or to accrue. Consequently, George's reletting of the premises was merely in exercise of the

option which Consolidated and Berkson's gave to him. George's act of reletting the premises to Walgreen's was for the benefit of Consolidated and Berkson's in order to mitigate the damages for which they were liable because of their breach of the lease. For the reasons stated, there was no accepted surrender and termination of Consolidated and Berkson's obligations, and it was liable to George for the unpaid rents.

It is also an established rule of this state that surrender of the premises under a lease by the tenant must have the consent of the landlord in order that the tenant may be discharged from liability to pay rent. Consent of the landlord may be expressed or may be implied from all the circumstances. Consent is not implied from the mere fact of a reletting, because a landlord who does not consent to a surrender is nevertheless bound to reduce his damages by reletting the premises if he can. (*Hoke v. Williamson,* 98 Kan. 580, 158 Pac. 1115.) There is no question but that the law applicable here is that surrender of leased premises by a tenant must be with consent of the landlord to relieve the tenant from the rent specified in the lease, or that where a tenant surrenders his lease without consent of the landlord the measure of damages is the difference between the contract price for the remainder of the term and the amount for which the landlord is reasonably able to relet the premises to a third party. (*Peterson v. Wilson,* 180 Kan. 180, 303 P. 2d 129; *Wilson v. National Refining Co.,* 126 Kan. 139, 266 Pac. 941; *Hoke v. Williamson,* supra.)

Acceptance of a surrender of a lease should not be presumed. The burden of proving it is on the lessee, and this is particularly true where the lessee abandons the premises and ceases paying rent. A tenant may not, by abandoning the premises and ceasing to pay rent, relieve himself of obligation to pay rent. He cannot reap an advantage from his own breach of the contract. If he desires to surrender he must secure the landlord's consent, and if he alleges surrender he must establish unequivocal manifestation of consent on the part of the landlord to termination of the relation of landlord and tenant. (*Guy v. Gould,* 126 Kan. 25, 266 Pac. 925.)

In *Wilson v. National Refining Co.,* supra, there arose a situation similar to the present one. The lessee abandoned the premises. The lessor gave notice that he was not accepting a surrender of the lease and he then relet the premises. The lessee claimed that

there had been acceptance of the surrender of the lease by the re-letting. This court stated:

"If, after notifying the lessee, who had voluntarily surrendered the lease and abandoned the premises, that he would be held responsible to the end of the term, the lessor relets the premises to a third party, such reletting will not in and of itself imply an acquiescence in or acceptance of the surrender of the lease so as to relieve the lessee of liability for the breach of the contract." (Syl. ¶ 13.)

In the instant case Consolidated and Berkson's do not contend George expressly accepted their surrender of the lease, and we find nothing in the record to indicate George impliedly accepted their surrender and abandonment of the lease. Shortly after the abandonment, as aforementioned, George notified Consolidated and Berkson's in writing that he did not consent to nor accept the surrender of the lease but would hold them responsible for their obligations thereunder. Moreover, George brought two separate suits and in the instant action to recover the monthly accrued rentals since the abandonment, unpaid taxes, insurance premiums, and real estate commission for reletting of the premises. In the two previous cases judgment was in favor of George and paid by Consolidated and Berkson's.

The instant action was begun and the case was tried and judgment rendered by the trial court in March, 1964. For nearly five years George was asserting his rights under the lease of Consolidated and Berkson's. Under these facts, and those heretofore related, it is obvious that Consolidated and Berkson's never secured George's consent to their surrender of the lease nor did George's acts of diligently reconstructing the premises and securing a new tenant, thereby mitigating Consolidated and Berkson's liability under its lease, amount to acceptance of their abandonment.

There is no contention on the part of Consolidated and Berkson's that George did not act in good faith in reletting the premises or that he did not secure the best available tenant. The fact that George spent some $100,000 of his own money in reconstructing a new building to secure a new tenant, which increased the amount of rent over the period of the new lease with Walgreen's, all of which mitigated Consolidated and Berkson's liability and inured to their benefit gave them no right to complain.

We are of the opinion the trial court erred in holding that George accepted Consolidated and Berkson's surrender of the

lease. In its brief Consolidated and Berkson's argue they should not be held liable for the cost of the reconstruction of the premises. The trial court disallowed this item, and George does not include that ruling among his statement of points upon which he intends to rely, nor his points relied upon in his brief, and, therefore, it is not here for appellate review.

Other matters in the record have been considered, but in view of our holding it is unnecessary to discuss them. The judgment of the trial court denying George's claim for reconstructing the premises and the allowance to George for real estate commission as an expense of reletting the premises is affirmed; the judgment of the trial court holding George accepted surrender of Consolidated and Berkson's lease is reversed and the case is remanded to the trial court for further proceedings in accordance with the views herein expressed.

Judgment is affirmed in part and reversed in part with instructions.