No. 22,577.

CHARLES F. ROCK, *Appellant,* v. A. E. VANDINE, *Appellee.*

### SYLLABUS BY THE COURT.

SALE OF FLOUR — *Prior Sale of Defective Flour to Defendant — Proper Counterclaim.* The proceedings examined, and *held* that a baker who was sued for damages for refusal to accept a consignment of flour, rested under no disability to counterclaim damages on account of the defective quality of other flour which he had purchased, and which he had used as a flour substitute under government regulation. *Held further,* the evidence was sufficient to sustain the counterclaim.

Appeal from Butler district court; ALLISON T. AYRES, judge. Opinion filed April 10, 1920. Affirmed.

*C. W. McVickers,* of Augusta, for the appellant.

*James Lawrence,* of Wellington, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover damages resulting from the defendant's refusal to accept and pay for a carload of flour. The defendant counterclaimed damages on account of the defective quality of a portion of another carload of flour. The court sustained the counterclaim, and rendered judgment accordingly. The plaintiff appeals.

The defendant was a baker with a large patronage, whose principal product was bread. While the fact was disputed,

Rock v. Vandine.

there was abundant proof, which the court evidently accepted, that the flour was not fit for bread making. The defendant used part of the flour, with the result he lost business, and the unused portion was of no value to him until government regulation permitted the use of substitutes for flour in making bread. At that time the defendant had on hand forty-four barrels of the flour, which cost him $9.60 per barrel. Taking advantage of the regulation, the defendant used the flour as a substitute, and in that way was able to use one sack with two sacks of good flour. He did not fix definitely the price of authorized substitutes at the time he was using this flour as a substitute. The price of substitutes kept going up. The price of rice flour reached $20 per barrel. Shorts were worth $3 per hundred. The only substitute the defendant was able to obtain was a poor grade of corn flour. What it cost he did not say. However, under cross-examination by the court itself, he finally fixed the value of the flour as a substitute at one-third what it cost him.

The plaintiff says the defendant should have returned the flour. The evidence was that the defendant complained of the flour, and retained it only because of a promise of adjustment, which was never made.

The plaintiff says it was the defendant's duty to mitigate his damages by using the flour in the way which would occasion the least possible loss. The defendant claimed nothing on account of loss of custom before he was permitted to make inferior bread under the substitute regulation. When the regulation became effective, he did use the flour in the most beneficial way.

In this connection it may be observed that, according to the classification of jural relations proposed by the late Professor Hohfeld, of Yale university, the term "duty" is misapplied in the statement of the plaintiff's contention relating to the defendant's counterclaim. The classification follows:

| "Jural | right | privilege | power | immunity |
| Opposites | no-right | duty | disability | liability |
| Jural | right | privilege | power | immunity |
| Correlatives | duty | no-right | liability | disability." |

(Hohfeld, Fundamental Legal Conceptions, p. 65; 26 Yale L. J. 710.)

According to this classification, which appears to be sound, and which, if observed, ought to conduce to clarity of thought and precision of expression, the defendant rested under no *duty* to the plaintiff to mitigate damages by using the flour to the best advantage. If so, he himself would have been subject to an action for damages resulting from breach of the duty. The correct statement would be that the defendant rested under legal *disability* to counterclaim for damages which he might have prevented. (See comment in 29 Yale L. J. 130, on decision in *Saxony Mills v. Huck,* 208 S. W. 868, a case involving counterclaim for loss of business on account of bad flour.)

The plaintiff says the defendant admitted he sustained no loss, and refers to the following questions and answers:

"Q. State whether you sustained any loss by mixing up this flour and selling it. A. I did not lose any, for the substitute law went in, but I did when I was trying to make bread out of it.

"Q. You lost by not having as good bread as your competitors? A. Yes, sir."

The defendant's testimony as a whole shows that when answering the questions the defendant probably had in mind loss of trade after the substitute regulation became effective, and shows with certainty that he did not mean to say he had not been damaged at all.

Finally, the plaintiff says the proof of the defendant's damages was too indefinite. The proof has been outlined. There was no objection to the method by which the value of the flour as a substitute was arrived at, the stated value was not disputed at the trial or at the hearing on the motion for a new trial, and consequently the court concludes the plaintiff has suffered no prejudice.

The judgment of the district court is affirmed.