No. 116,373

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

LINDA K. MILLER,
*Appellant*,

v.

WILLIAM BURNETT,
*Appellee*.

SYLLABUS BY THE COURT

1.

As a general rule, an appellate court cannot determine whether substantial evidence supports a trial court's factual findings unless a transcript of the evidence presented to the trial court is included in the appellate record.

2.

Although Kansas recognizes a landlord's duty to mitigate damages, that duty does not arise unless the tenant has abandoned the property. A landlord's duty to mitigate damages does not authorize interference with the tenant's rights to exclusive possession and quiet enjoyment of the leased premises.

Appeal from Wabaunsee District Court; GARY L. NAFZIGER, judge. Opinion filed June 9, 2017. Reversed and remanded with directions.

*Linda K. Miller*, appellant pro se.

*William Burnett*, appellee pro se.

*Tucker A. Stewart*, associate counsel, for *amicus curiae* Kansas Livestock Association.

Before STANDRIDGE, P.J., LEBEN, J., and PATRICIA MACKE DICK, District Judge, assigned.

LEBEN, J.: In early 2016, Linda K. Miller sued her landlord, William Burnett, claiming she was entitled to damages because he had allowed his neighbor's horses to graze on the 35 acres of pastureland that she rented from him and also had denied her access to the land for several months. Burnett filed a counterclaim against Miller, claiming she hadn't paid rent. Miller lost at both small-claims court and at a bench trial in district court; the court ordered her to pay Burnett the rent she owed. On appeal, she essentially argues that, based on the evidence, the district court reached the wrong result.

Unfortunately, at least from her vantage point, she did not include a trial transcript in the record on appeal. Without this, we cannot know what evidence the district court relied on to make its decision, so we cannot evaluate the factual validity of that decision.

But we can evaluate the district court's legal conclusion that because Miller hadn't paid rent, Burnett was required to mitigate his damages by allowing his neighbor's horses to graze on the rented property. That's not correct. First, while landlords do have a duty to mitigate damages under Kansas law (a minority position nationally), that duty arises only when a tenant abandons the property—it simply doesn't apply in this situation, where all we know for sure is that the tenant failed to pay rent but might have still occupied the premises. Second, the district court's conclusion is at odds with another principle of landlord-tenant law, the implied covenant of quiet enjoyment, which exists in every Kansas lease and prevents a landlord from interfering with the tenant's exclusive use and possession of the rented property. The law simply does not authorize a landlord to breach this covenant of quiet enjoyment and interfere with the tenant's sole possession based on a nonpayment of rent when the tenant is still in possession—a landlord has other legal remedies available when a tenant fails to pay rent.

2

Beginning around 2010, Miller rented 35 acres of pastureland in Wabaunsee County from Burnett; she and her husband used the land to grow and harvest brome grass. The parties seem to agree that they had an oral lease agreement, that the rent was $1,000 a year, and that the lease terminated on March 1, 2016. (By statute, oral farm leases in Kansas run from March 1 to March 1. K.S.A. 58-2506[a].) Otherwise, the key facts in this case are disputed.

In February 2016, Miller filed a case in small-claims court alleging that Burnett had violated the terms of the oral lease when he allowed four horses (belonging to a neighbor) to graze on the rented pastureland in late summer 2014 and late summer 2015 and when he denied her access to the pastureland for 3 months, December 2015 through February 2016. For damages, Miller asked for half the cost of fertilizing the pastureland in 2014 and 2015 (totaling $1,956), half the rent for 2014 and 2015 (totaling $1,000), the cost of feeding the cattle instead of grazing them, and an unspecified amount of money for being denied access to the property.

Burnett filed a counterclaim against Miller, alleging that she hadn't paid the $1,000 rent for the 2015-2016 lease term. He made additional claims for the cost of storing a piece of Miller's farm equipment and for an unpaid water bill.

The small-claims court didn't make any specific factual findings (at least in writing), but it denied Miller's claims and granted Burnett's claim for rent, ordering Miller to pay Burnett $1,000. Miller appealed that decision to the district court.

The district court also denied Miller's claims and ordered her to pay Burnett $1,000 in rent for the 2015-2016 lease term. The district court's written order likewise didn't make many specific factual findings, stating only: "Plaintiff breached implied

3

contract by failing to pay rent. Defendant was obligated upon plaintiff's breach to mitigate his damages by grazing horses."

Miller has appealed to our court.

ANALYSIS

Miller argues on appeal that she is entitled to damages because Burnett violated the oral lease when he allowed a neighbor's horses to graze on the pastureland that she rented from him and when he denied her access to the land for 3 months.

When a trial court has made findings of fact and conclusions of law, our standard of review is whether those findings of fact are supported by substantial evidence and whether the findings are sufficient to support its legal conclusions. We then independently review the court's legal conclusions, without any required deference to the district court. *Owen Lumber Co. v. Chartrand*, 283 Kan. 911, 915-16, 157 P.3d 1109 (2007).

In most cases, after reciting this standard, we would go on to evaluate whether substantial evidence supports the trial court's factual findings. In this case, though, we have an initial difficulty—because the transcript of the trial below is not included in the record on appeal, there's no way for us to decide whether substantial evidence supports the trial court's factual findings. Simply, since we don't know what evidence there was at trial, we can't know whether it was substantial. The burden is on the party making a claim on appeal—here, Miller—to show facts in the record that support the claim; without such a record, the claim of error necessarily fails. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644-45, 294 P.3d 287 (2013). So we cannot evaluate Miller's factual claims or reverse the district court's judgment based on its factual findings. What we can do, though, is evaluate the district court's conclusions of law, asking whether the factual

4

findings are sufficient to support the legal conclusions. See *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, 377, 855 P.2d 929 (1993).

The district court found that Miller had failed to pay rent for the 2015-2016 lease term (a fact Miller actually concedes, although she disputes when rent was due under the lease). Not paying rent is a breach of a lease agreement. *Norris v. McKee*, 102 Kan. 63, 65, 169 Pac. 201 (1917); Restatement (Second) of Property, Landlord and Tenant § 12.1(1) (1977). The district court concluded that because Miller had breached the oral lease by failing to pay rent, Burnett was *required* to graze the horses on the rented land to mitigate the damages caused by this breach. We disagree.

Usually, if someone breaches a contract—doesn't do something he or she is required to do by the agreement—the other, nonbreaching party to the agreement can file a lawsuit and be awarded the full amount of damages caused by the breach. But in some circumstances, courts impose a special rule on the nonbreaching party called the "duty to mitigate damages," which requires the person damaged by a breach of contract to take some action to try to reduce the amount of those damages. Black's Law Dictionary 618 (10th ed. 2014). This duty is an additional responsibility—instead of just getting damages from the person who caused them, the nonbreaching party first has to try to reduce those damages.

In a landlord-tenant context, only a minority of states recognize a duty to mitigate damages. *In re Estate of Sauder*, 283 Kan. 694, 712, 156 P.3d 1204 (2007) (noting that applying this duty in a landlord-tenant context is the minority rule). The majority rule is that if a tenant abandons the lease, the landlord doesn't have to try to find a new tenant; the landlord can just sue the abandoning tenant for the full amount of rent owed under the lease. Restatement (Second) of Property, Landlord and Tenant § 12.1(3) (1977). But Kansas follows the minority rule: If a tenant abandons a lease, the landlord has a duty to try to find a new tenant rather than just suing the original tenant for any remaining rent.

5

*In re Sauder*, 283 Kan. at 712. But the duty to mitigate damages doesn't arise *until* a tenant abandons the lease. *Wichita Properties v. Lanterman*, 6 Kan. App. 2d 656, 659, 633 P.2d 1154 (1981) ("[T]he duty to mitigate does not begin until tenant abandons the property and notifies the landlord of that abandonment."). And there's no suggestion before us that Miller abandoned the lease.

Even so, the district court concluded that Burnett had to mitigate his damages without considering whether Miller had abandoned the lease—its conclusion was based solely on Miller's nonpayment of rent. We can find no caselaw suggesting that the duty to mitigate damages arises or applies in cases that don't involve either abandonment or termination of the lease. On the contrary, the Kansas Supreme Court has described it this way: "Kansas follows the minority position, imposing upon a landlord the duty to make reasonable effort to secure a new tenant *if a tenant surrenders possession of leased property*." (Emphasis added.) *In re Sauder*, 283 Kan. at 712. And though the Restatement (Second) of Property follows the majority, no-duty rule, it nonetheless phrases the duty to mitigate as one that could arise only when a tenant abandons the property: "[*I*]*f the tenant abandons the leased property*, the landlord is under no duty to attempt to relet the leased property for the balance of the term of the lease to mitigate the tenant's liability under the lease." (Emphasis added.) Restatement (Second) of Property, Landlord and Tenant § 12.1(3). In sum, the district court wrongly concluded that Burnett had a duty to mitigate damages based solely on a nonpayment of rent and without any consideration of whether Miller had abandoned the lease. See *Wichita Properties*, 6 Kan. App. 2d at 659 (the duty to mitigate isn't triggered until the tenant abandons the lease). Nothing in the record available to us suggests that Miller had abandoned the lease.

An additional problem with the district court's conclusion is that it would allow a landlord to interfere with the tenant's possession of the rented property. When a landlord leases property to a tenant, the tenant has exclusive right of possession. Restatement (Second) of Property, Landlord and Tenant § 1.2 (1977) ("A landlord-tenant relationship

6

exists only if the landlord transfers the right to possession of the leased property."). The tenant's right to exclusive possession is encapsulated in what lawyers call the "implied covenant of quiet enjoyment," which exists in every Kansas lease, including oral farm leases. *Stewart v. Murphy*, 95 Kan. 421, Syl. ¶ 2, 148 Pac. 609 (1915). A "covenant" is simply a promise, and "implied" just means that this promise is a part of every lease, even if the lease doesn't expressly say anything about it. Black's Law Dictionary 443, 872 (10th ed. 2014). "Quiet enjoyment" means that a tenant has possession of the property and is free to come and go from the property without the landlord's interference. See *Stewart*, 95 Kan. at 423-25; see also *Bocchini v. Gorn Management Co.*, 69 Md. App. 1, 6-7, 515 A.2d 1179 (1986) (landlord can't interfere with the tenant's right to use and enjoy the property). If a landlord were required to mitigate damages caused by the nonpayment of rent when a tenant has not abandoned the property, then the landlord would be required to violate the implied covenant of quiet enjoyment and the tenant's right to exclusive possession without the landlord's interference. This significant point was raised in the amicus brief submitted by the Kansas Livestock Association, and it's a reasonable one. The duty to mitigate damages has its limits. It isn't a license for landlords to interfere with a current tenant's use of the rented property.

Saying that a landlord can't interfere with the tenant's exclusive use of the property merely due to nonpayment of rent doesn't leave the landlord without recourse: The landlord has other remedies available when a tenant fails to pay rent but doesn't abandon the leased property. For example, if a tenant fails to pay rent when it's due, the landlord can give the tenant notice that the lease will be terminated if rent isn't paid within 10 days. K.S.A. 58-2507. And specifically related to farm leases, a landlord can enforce a lien (a legal interest in someone else's property) on the crops growing on the farmland: "Any rent due for farming land shall be a lien on the crop growing or made on the premises." K.S.A. 58-2524; Black's Law Dictionary 1063 (10th ed. 2014). Either of these options protects the landlord's right to receive rent without interfering with the tenant's possessory rights.

7

So where does all of this leave us? We can't review the factual findings of the district court in the absence of a transcript, so we must accept those factual findings. But it's clear to us that the district court's judgment was based in part on a legal error—its conclusion that Burnett's duty to mitigate damages authorized him to allow others to graze their horses on the rented pastureland. Because the district court's judgment is based in part on a legal error, we reverse it. We remand the case for the district court to reconsider application of the law to the facts as it found them in a manner consistent with this opinion.

The district court's judgment is reversed, and this case is remanded for further proceedings consistent with this opinion.