NOT DESIGNATED FOR PUBLICATION

No. 118,924

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

LINDA K. MILLER,
*Appellant*,

v.

WILLIAM A. BURNETT,
*Appellee*.

MEMORANDUM OPINION

Appeal from Wabaunsee District Court; GARY L. NAFZIGER, judge. Opinion filed November 21, 2018. Affirmed.

*Linda K. Miller*, appellant pro se.

*William Burnett*, appellee pro se.

Before MCANANY, P.J., PIERRON and LEBEN, JJ.

PER CURIAM: Linda Miller sued her landlord, William Burnett, for damages after he allowed his neighbor's horses to graze on the 35 acres of pastureland that she had rented from him and, she alleged, also denied her access to the land for several months. Burnett filed a counterclaim against Miller, claiming she hadn't paid rent. After the district court ruled against Miller, she appealed to this court; we sent the case back for further consideration. The district court again ruled against Miller, and Miller again appealed, arguing that the district court should have awarded her damages for Burnett letting horses graze on the leased land.

Miller may well be right that she sustained some damages when Burnett let horses graze on the land he had leased to Miller. But as the plaintiff in a lawsuit, Miller had the burden to prove her damages. While she did produce evidence of the costs she had incurred related to the pasture, she didn't really tie that evidence to the presence of the horses on the land. Because the district court ruled against her, we presume the court found her proof of damages insufficient. As an appellate court, we do not reweigh the evidence and cannot substitute our evaluation of the damages evidence for the trial court's. We therefore affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Beginning around 2010, Linda Miller rented 35 acres of pastureland in Wabaunsee County from William Burnett; she and her husband used the land to grow and harvest brome grass. The parties agree that they had an oral lease agreement, that the rent was $1,000 a year, and that the lease terminated on March 1, 2016. (By statute, oral farm leases in Kansas run from March 1 to March 1. K.S.A. 58-2506[a].) Otherwise, the key facts here are disputed.

In February 2016, Miller filed a claim against Burnett in small-claims court alleging that Burnett had violated the oral lease in two ways: (1) when he allowed four horses that belonged to a neighbor to graze on the rented pastureland in late summer 2014 and late summer 2015 and (2) when he denied her access to the pastureland for three months, December 2015 through February 2016. For damages, Miller asked for half the cost of fertilizing the pastureland in 2014 and 2015 (totaling $1,956), half the rent for 2014 and 2015 (totaling $1,000), the cost of feeding the cattle instead of grazing them, and an unspecified amount of money for being denied access to the property.

2

Burnett filed a counterclaim against Miller, alleging that she hadn't paid the $1,000 rent for the 2015-2016 lease term. He made additional claims for the cost of storing a piece of Miller's farm equipment and for an unpaid water bill.

The small-claims court denied Miller's claims and granted Burnett's claim for rent, ordering Miller to pay Burnett $1,000. Miller appealed that decision to the district court, which then heard the parties' evidence and entered its own ruling.

During that trial, Burnett admitted to letting his neighbor's horses out on the pasture that Miller was renting from him, but claimed that Miller's husband, Alan, never had a problem with the horses. Miller denied ever giving Burnett permission to let the horses into that pasture while it was leased.

The district court also denied Miller's claims and ordered her to pay Burnett $1,000 in rent for the 2015-2016 lease term. The district court's written order didn't make many specific factual findings, stating only: "Plaintiff breached implied contract by failing to pay rent. Defendant was obligated upon plaintiff's breach to mitigate his damages by grazing horses."

Miller appealed to our court, arguing that she was entitled to damages because Burnett had violated the oral lease when he allowed the neighbor's horses to graze on the pastureland that she rented from him. She also claimed she was entitled to damages for the three months that Burnett allegedly denied her access to the land.

We reversed the district court's judgment and sent the case back for further consideration. We concluded that the district court erred when it concluded "that Burnett's duty to mitigate damages authorized him to allow others to graze their horses on the rented pastureland." *Miller v. Burnett*, 54 Kan. App. 2d 228, 234, 397 P.3d 448 (2017).

3

On remand, the district court confirmed its original finding that Miller had failed to pay rent and the lease had been terminated. The court determined that Burnett didn't owe Miller any money on Miller's claim. It also ordered Miller to pay Burnett $1,000 plus interest. Finally, the court awarded possession of the pasture to Burnett, essentially finding that the lease had been terminated. In effect, the district court reinstated its original judgment minus the provision about mitigating damages.

Miller again appealed to our court.

ANALYSIS

Miller argues that she is entitled to damages because Burnett violated the oral lease when he allowed the neighbor's horses to graze on the pastureland and when he denied her access to the land for three months. Miller claims that she should only pay Burnett half of the rent ($500 total) for 2014 and 2015. She also says Burnett should pay her for half of the fertilizer bill for 2014 ($978), half of the fertilizer bill for 2015 ($978), and half of the rent paid to Burnett in 2014 ($500). Miller says she "invested [a] significant amount of money in the fertilizer" and that it "cost [her] a significant amount of money due to not being able to fully utilize the property."

When a trial court has made findings of fact and conclusions of law, we first look to see whether those findings of fact are supported by substantial evidence and whether the findings are enough to support its legal conclusions. With the factual findings supported by substantial evidence in mind, we then independently review the court's legal conclusions with no required deference to the district court. *Miller*, 54 Kan. App. 2d at 230.

When this case first came before us on appeal, we noted that "because the transcript of the trial below is not included in the record on appeal, there's no way for us

4

to decide whether substantial evidence supports the trial court's factual findings." 54 Kan. App. 2d at 230. This time, the appellate record includes the trial transcript, so we can decide whether the district court's findings of fact are supported by substantial evidence.

On remand, the district court found that Miller "breached the implied contract by failing to pay rent." Miller doesn't seem to dispute this fact. At the 2017 remand hearing, Miller told the court, "I never denied owing the 2015 rent."

Not paying rent is a breach of a lease agreement, so substantial evidence supports the district court's finding that Miller breached the oral lease with Burnett by failing to pay rent. See *Miller*, 54 Kan. App. 2d at 231 (citing *Norris v. McKee*, 102 Kan. 63, 65, 169 P. 201 [1917]; Restatement [Second] of Property, Landlord and Tenant § 12.1[1] [1977]). And since Miller did owe Burnett rent from 2015, the district court correctly ordered Miller to pay the amount due to Burnett. See *Wichita Properties v. Lanterman*, 6 Kan. App. 2d 656, 665, 633 P.2d 1154 (1981).

The court's second finding of fact had to do with Miller's claim that she's entitled to damages since Burnett breached the covenant of quiet enjoyment. For that finding, the court found that "[Miller] failed to establish her claim by a preponderance of the evidence in the hearing before this Court [in June 2016]."

Miller premises her argument on her claim that Burnett breached the covenant of quiet enjoyment—basically the promise that she, as the tenant, had exclusive right of possession of the land she was leasing without the landlord's interference. See *Miller*, 54 Kan. App. 2d at 232-33. Here, there's plenty of evidence showing that Burnett violated the implied covenant of quiet enjoyment when he interfered with Miller's exclusive possession of the leased land by letting his neighbor's horses out on the leased land. In a letter Burnett wrote to the court before the June 2016 trial, he said that he told his neighbor "to go ahead and turn [his] horses out." And at the bench trial, Burnett admitted

5

that in 2014 he allowed the neighbor's horses on the leased land, although he contended he had Miller's permission. Burnett also testified that during a conversation he had with Miller in August 2015, Miller denied there being a problem with the horses' presence.

But even though there's substantial evidence showing that Burnett violated the implied covenant of quiet enjoyment, Miller's ultimate claim is one for damages—not just a finding that Burnett breached the lease. And that's where problems arise, especially in the context of an appeal. Miller had the burden at trial of proving her damages. See *Cerretti v. Flint Hills Rural Electric Co-op Ass'n*, 251 Kan. 347, 362, 837 P.2d 330 (1992); *Aguilar v. Balano*, No. 102,351, 2010 WL 4668333, at *2 (Kan. App. 2010) (unpublished opinion). While she wasn't required to establish her damages with absolute certainty, claims for conjectural and speculative damages cannot support an award. See *Kendrick v. Manda*, 38 Kan. App. 2d 864, 871, 174 P.3d 432 (2008).

In addition to her burden of proof on the damages issue, another problem confronts Miller on appeal. We recognize that the trial court's factual findings were limited. But when no request is made to the trial judge for additional factual findings, an appellate court generally presumes that the judge has made the necessary factual findings and legal conclusions to support his or her decision. *Dragon v. Vanguard Industries*, 282 Kan. 349, 356, 144 P.3d 1279 (2006); *Brown Family Trust v. Taylor*, No. 112,935, 2015 WL 8590390, at *4 (Kan. App. 2015) (unpublished opinion). Here, the district court never made a factual finding about whether it believed Burnett's claim that Miller or her husband had agreed to having the horses in the pasture, so it's possible that was the basis of the court's decision. All the court said was that "[Miller] failed to establish her claim by a preponderance of the evidence." It's at least equally likely, though, that the district court focused on Miller's damages evidence and found it insufficient. We will focus on that evidence here.

In the original petition, Miller asked for half the cost of fertilizing the pastureland in 2014 and 2015 (totaling $1,956), half the rent for 2014-2015 lease and half the rent for the 2015-2016 lease (totaling $1,000), the cost of feeding the cattle instead of grazing them, and an unspecified amount of money for being denied access to the property. In her reply brief in this appeal, she now asks that she only be required to pay half of the rent she owes Burnett ($500 total), half of the fertilizer bill for 2014 ($978), half of the fertilizer bill for 2015 ($978), and half of the rent paid to Burnett in 2014 ($500). Although she originally asked for the costs she incurred from grain-feeding the cattle, she doesn't request those damages on appeal.

The purpose of awarding damages is to restore a party "to the position he or she was in prior to the injury." *Cerretti*, 251 Kan. 347, Syl. ¶ 6. For a party's claims to warrant the recovery of damages, "there must be some reasonable basis for computation which will enable the trier of fact to arrive at an estimate of the amount of loss." 251 Kan. 347, Syl. ¶ 6. Likewise, as a fundamental rule of contracts, the party seeking to recover for a breach of contract, like an oral lease, must prove that the purported breach caused the claimed damages. See *Chapman v. Kansas Basement & Foundation Repair*, No. 100,941, 2009 WL 1911750, at *4 (Kan. App. 2009) (unpublished opinion) (citing *American Maplan Corp. v. Heilmayr*, 165 F. Supp. 2d 1247, 1253 [D. Kan. 2001]).

Applied here, this means Miller had to present evidence to the trier of fact—in our case, the district court—to support the amount of her claimed losses (half the amount she spent on rent and fertilizer between 2014 and 2016). And Miller had to show that the breach by Miller—letting horses out on the leased land—caused the claimed damages. At this point, we simply encounter a lack of proof.

Miller says that in 2014 and 2015 she had to graze the cattle on the pasture after harvesting the hay just to "make [the lease] profitable or make it pay for itself" because of the increased fertilizer costs and decreased value of hay. To support her position, she

7

included an invoice from March 25, 2015, showing that she spent $3,915.70 on fertilizer, presumably for the lease period from March 1, 2015, to March 1, 2016.

But this invoice doesn't prove her losses—it only proves her costs. Nor does she prove damages in this case with a general claim that she should be repaid half the rent for some diminished value of the pastureland.

It seems that Miller leased the land from Burnett largely to harvest hay, but we have no evidence that she was ever prevented from harvesting the hay. In fact, Burnett told the court that "[Alan] Miller told me in June 2015 that the crop was the best crop he'd ever had in quality." Alan Miller agreed, explaining that he wasn't going to grind up that year's crop because it was "[t]oo good to grind."

Since Miller harvested the hay each year, she apparently got *some* financial benefit from putting down the fertilizer. We don't know several things that would have been significant in figuring out what damages, if any, she suffered. Did putting horses on the land somehow interfere with her ability to harvest additional hay? Did having horses on the pasture prevent her from also putting cattle there? How did the hay crop in the years before the horses were let into the pasture differ from the crop in the years when Burnett breached the lease? What was the cost to her from putting the cattle elsewhere rather than letting them feed on this pastureland?

To sum up the damages evidence, Miller was always able to harvest hay and reap that benefit of the lease, so it's unclear how letting the horses out on the land caused her to lose half the lease value. Indeed, Miller doesn't point to any evidence showing that the hay harvest suffered from the horses being let out on the pasture. Nor does she point to anything showing the quantity or quality of the crop before Burnett let the horses on the land compared to the quantity or quality of the crop after the breach occurred.

8

We do have Miller's evidence that, for reasons not explained in our record, she felt she couldn't put cattle on the pastureland with the horses. But we have no evidence about that causing a drop in the hay production or some other specific economic damage to Miller. In other words, while there's evidence of Miller's costs, there's simply no evidence that Burnett's actions caused the damages that Miller is claiming. In that circumstance, we can find no fault with the district court's conclusion that Miller "failed to establish her claim."

We realize that there may be things about farming operations generally and those taking place specifically in Wabaunsee County that the parties and the local district judge know that we do not. We also recognize that both parties are self-represented and that this case involved a small enough monetary claim that it may not have been reasonable to hire an attorney. We can only decide this specific appeal, though, based on the evidence the parties chose to put in the record.

We find no error in the district court's award of $1,000 to Burnett for rent due or in its denial of Miller's claims for relief. We affirm the district court's judgment.